No. 80-58

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

---

STATE OF MONTANA,

Plaintiff and Respondent,

vs.

BUDDY LEON ADAMS and
JOHN CHARLES NORTHWIND,

Defendants and Appellants.

---

Appeal from: District Court of the Twelfth Judicial District,
In and for the County of Blaine.
Honorable B. W. Thomas, Judge presiding.

Counsel of Record:

For Appellants:

Altman and Lilletvedt, Havre, Montana
Brian Lilletvedt argued, Havre, Montana
Weber, Bosch, Kuhr, Dugdale, Warner and Martin, Havre, Montana
Keith A. Maristuen argued, Havre, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Allen Chronister argued, Assistant Attorney General,
Helena, Montana
Donald A. Ranstrom, County Attorney, argued, Chinook,
Montana

---

Submitted: November 14, 1980

Decided: DEC 29 1980

Filed: DEC 2 1980

Thomas J. Kearney
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Defendants Adams and Northwind appeal their convictions of felony theft from Blaine County District Court.

Adams and Northwind were charged by complaint on August 28, 1979, with the offense of misdemeanor theft in Blaine County. On September 5, 1979, both defendants were charged with felony theft. Defendants filed a motion to dismiss on the grounds that the State could not prove that the amount taken exceeded $150. The prosecution filed an amended information on the 27th of September. On November 1, 1979, defendants moved to dismiss the amended information, as it related to the allegations of an offense in Poplar, Roosevelt County, Montana, on the grounds of improper venue. The State was granted leave to file a second amended information, and defendants renewed their objections based on improper venue. Trial began on November 2. The jury returned a verdict of guilty on the charge of felony theft. Adams, found to be a persistent felony offender, was sentenced to eight years in the state prison. Northwind was sentenced to six years with three years suspended. This appeal follows.

On Friday, August 24, 1979, defendant Adams was seen in Don's Bar in the town of Poplar, Roosevelt County, Montana, by Elizabeth Steele (a customer) and Stella Moran, the bartender. They observed Adams sitting next to the jukebox when Steele went to play it. When Steele asked Adams what he was doing, he walked away without responding. Moran in turn reported this to her boss, Roberta Fredrick, who then examined the jukebox and determined that the machine was not disturbed.

Fredrick and Moran saw Adams in the bar on Saturday, August 25, 1979. Fredrick did not recall seeing either of the defendants in the bar after 4:00 p.m. Saturday afternoon.

At approximately 8:00 p.m. that day, she discovered that her jukebox had been broken into and the money taken. Fredrick had been in and out of the bar all day running errands, checking ID's and doing whatever needed to be done. She never positively indicated that she saw defendant Northwind in the bar on Saturday; however, she did indicate that she did not pay much attention or watch that closely.

At approximately 11:30 p.m. on August 25, 1979, defendants Adams and Northwind entered the Stockmans Bar in Chinook, Montana, in Blaine County. They ordered from the bar and then moved to a table beside the jukebox. Adams placed several coins into the jukebox, and Northwind began to select the songs. Carol Upshaw, the owner and bartender, was behind the bar.

The music began to play, and Upshaw heard the sound of coins hitting something. Immediately thereafter, the three men at the table got up and left the bar. Upshaw followed them outside and saw them leave in a gold Chevrolet. She went back in, closed the bar and went home.

On Sunday, August 26, 1979, Upshaw told her husband, Robert Upshaw, that she believed someone had taken the money from the jukebox. Robert Upshaw then went to the bar, examined the jukebox, dropped two coins into it, and discovered that the coin box was empty.

Adams and Northwind present the following question for our review: Was Blaine County the proper forum in which to proceed when the information also charged defendants with a theft occurring in Roosevelt County? We find it was not and remand the cause for proceedings consistent with this opinion. In view of the fact that the venue issue warrants remand, all other issues raised by defendants will not be addressed.

By statute, the general rule in Montana is that, in criminal actions, venue is proper only in the jurisdiction where the crime occurred. Section 46-3-101, MCA. The code does provide certain exceptions to that general statement of law. One of these exceptions is embodied in section 46-3-102, MCA, wherein it provides that "[w]here two or more acts are requisite to the commission of any offense, the trial may be in any county in which any of such acts occur."

The State adopted the position that the thefts in Blaine County and Roosevelt County were two acts which, when linked together by a common scheme, constituted one crime--felony theft. Defendants argued that, if indeed they were guilty, the most they were guilty of was two misdemeanor thefts, those thefts being separate and distinct offenses, not triable in the same county.

The concept of "common scheme" appears in several sections of Montana's Criminal Code. Section 45-2-101(7), MCA, defines the term as a series of acts or omissions "motivated by a purpose to accomplish a single criminal objective or by a common purpose or plan which results in the repeated commission of the same offense or affects the same person or same persons or the property thereof." This definition, as applied in the bad check, deceptive practices, and forgery statutes, imposes a higher penalty for offenses committed pursuant to an elaborate plan, in contrast to the penalties imposed for the single fraudulent act. See Annotator's Note, Montana Criminal Code 1973 Annot., (1980 Rev. Ed.). See also sections 45-6-316, 45-6-317 and 45-6-325, MCA.

The State argues that there is no indication that the common scheme concept is limited to bad check and forgery situations, and, therefore, the prosecution properly imposed

a higher penalty for the two offenses or acts, thus establishing venue in either Blaine or Roosevelt County. At the heart of the State's analysis is the assumption that the two criminal acts were continuing; one theft foreshadowing or preparing the way for the second. If we accept this assumption, we come within the ambit of section 46-3-102, MCA, where acts requisite to the commission of a crime, occurring in more than one jurisdiction, establish proper venue in any one of the affected counties.

This Court is convinced, however, that the State's assumption is a flawed and inadequate basis for the trial of the Roosevelt County offense in Blaine County. We find that the offenses were linked together by similarity and nothing more. In no apparent way was the Chinook theft a continuation of the theft in Poplar; nor was the Poplar offense incomplete so that when the offense took place in Chinook a single crime of felony theft was consummated. In our view, two separate and distinct offenses occurred in two different jurisdictions. Under the law of this State, the crimes must be charged and tried in the counties in which they occurred. Section 46-3-101, MCA.

We reverse the convictions on the Poplar theft, reduce the felony theft convictions from Blaine County to misdemeanors, and remand for resentencing in Blaine County.

_____
Justice

-5-

We concur:

_____
                Chief Justice

_____

_____
                Justices

Mr. Justice Daniel J. Shea will file a separate opinion later.